No. 11,090.

THERESA HAAS vs. GODCHAUX BROS.

A partner sold his interest in a partnership of which he was a member, to a new firm.

Prior to the sale the said partnership had consented to a payment of a claim against it, to the amount entered on the books.

The new firm, purchasers and successors of the old firm, assumed, in the act of transfer to them, the liabilities of their vendor, the old firm.

The new firm is bound for the payment of the claim assumed.

APPEAL from the Civil District Court for the parish of Orleans. *King, J.*

*Thos. J. Semmes* for Plaintiff and Appellee.

*Buck, Dinkelspiel & Hart,* for Defendants and Appellants, cited: Bates on Partnership, Secs. 317, 321, 347, 354, 365; Fell on Guaranty and Suretyship, p. 164; 1 Wend. 122; 7 Wend. 158; Story on Partnership, p. 142, Sec. 134; 30 An. 1292; 39 An. 1077.

The opinion of the court was delivered by

BREAUX, J. Plaintiff claims $4000 and interest of the defendant firm.

She says that she was a creditor of the firm of Godchaux & Silbernagel, composed of the defendants, Lazard Godchaux and Albert M. Silbernagel, her son; that her name stood on the books of the firm for the sum of $4000, as appears by an entry dated 27th October,

1891, but really made on or about the 15th of November, 1891; that on 6th January, 1892, the firm of Godchaux & Silbernagel was dissolved and a firm as its successor was on the same day formed, composed of the defendants, and thereupon, on the same day the dissolved firm sold and transferred all its assets to the new firm, its successors, in consideration of which the new firm assumed and agreed to pay all debts and obligations of its predecessor, the dissolved firm, one of which was the debt of $4000 aforesaid, due with interest from October 17, 1891.

She alleges that she had lent her son on the 15th day of October, 1888, the sum of $5000, also the sum of $1500 on May 10, 1890, which he used as capital in the firm of Godchaux & Silbernagel; that the firm being in need of money in the fall of 1891, her son sold real estate from which he realized $4000, and on 27th October, 1891, although his capital account was equal in amount to that of his co-partner, he put said sum of $4000 in his firm to the credit of his capital account. Subsequently, on or about 15th November, 1891, in order to pay a portion of his debt to her, he transferred on the books of the firm said sum of $4000, from his own credit to her credit; that this transfer was made by erasing the original entry of $4000 to his own credit, on 27th October, 1891, and crediting her with the sum of $4000 as of date October 27, 1891.

That the partner of her son, at first, objected to this transfer, but subsequently, after discussion and consideration, assented and agreed that her name should stand on the books of the firm on the footing of a creditor who had made a loan to the firm.

That the assent of her son's partner was communicated to her; she accepted by substituting to her son's debt the debt of the firm and endorsed on the note her son had given her in 1888 for the loan of $5000, a credit of $4000, as of date of 27th October, 1891. The defendants pleaded the general issue.

Plaintiff and her son Silbernagel have testified to the correctness of the above statement.

Another witness, a relative of the latter, testified that he had been informed of the claim before any dispute had arisen about its payment.

The book-keeper of the late firm of Godchaux & Silbernagel testified that in December, 1891, under the direction of the last named member of the firm, he changed an entry in the books of the firm

so that thereafter the name of plaintiff stood on the books of the firm as a creditor for the amount claimed.

The son of the plaintiff testifies at some length, and says:

That he loaned the amount to the firm on 27th October, 1891.

That by error the entry shows that it was placed to the credit of his capital account; that he allowed the error to remain until November, when it was changed by his order and placed to the credit of his mother, with the knowledge of his partner; that he informed him at the time that he had as much money in the business as he, and that if he objected he would withdraw the amount from the firm, and that thereupon his partner consented.

The statements are contradicted by his partner, who says that it was not a loan, but placed in the firm as part of the capital account, and that he was never informed of the cancellation before the dissolution of the firm.

Leopold Godchaux, of the firm of Godchaux Bros., purchasers of Silbernagel's interest in the firm of Godchaux & Silbernagel, testifies that he conversed with the latter about the business of the firm just prior to the purchase, and was informed by him that he owned the claim of $4000 in question, and urged it as a consideration for which he should be paid the price he asked for his interest.

The firm of Godchaux Bros. bought Silbernagel's interest in the firm of Godchaux & Silbernagel on January 7, 1892. The purchasers assumed *in solido* and agreed to pay all the then existing obligations of the firm of Godchaux & Silbernagel. The vendor says that the amount of $4000 was due to his mother, a creditor. The defendants, vendees, defend on the ground that it formed part of the capital of the firm, and was transferred as such.

About the end of December of the year preceding the partners of the said firm met their traveling clerk and conversed in his presence in reference to the cancellation and entry made in the books.

Godchaux, the then partner, objected, and in the conversation asked Levy, the said traveling clerk: "Didn't you agree to put this money that you were to raise up there to his capital account?" To which he replied: "Well, I remarked to him at that time, and I wouldn't like to be very positive right now, there was so much said about it; there were several conversations at that time. He may have said it was put to his capital account; at any rate, it was certainly understood that the money was to go into the business, and I told that to Mr. Godchaux at the time in the conversation we had."

Godchaux complained of the change of entries in the books, and added, "How do I know if Mrs. Haas may come at any time and want her money, and I would be just in as bad a fix as previously."

The witness says he suggested that the entry remain as it was, and if anything happened to the firm the plaintiff would share *pro rata* with all the confidential creditors, to which the partners assented.

The book-keeper testifies that under the direction of Silbernagel he erased "Capital account of A. M. Silbernagel," and wrote in its place, "Loan account of Mrs. T. Haas." Similar changes were made in the trial balance for October and November.

In the rough cash book kept by Silbernagel in person his name and the words "capital account" were erased and the following written: "Loan account of Mrs. T. Haas. Check Whitney National Bank, $4000."

The entries bear date October 27, 1891, the change was made about the 15th day of December, 1891. From the former to the latter date the amount formed part of Silbernagel's capital account.

This witness further testifies that he asked him "if he didn't give his capital account credit for four thousand dollars during October, and I turned to his account and said 'yes, on the 27th,' and he says, 'Well, that is wrong, that must go to Mrs. Haas' account.' I said, 'Well, shall I make a journal entry of this? He says, 'No, put it in the loan account of even date—same date, October 27,' and I said 'that will necessitate to have me to change my trial balance book for two months,' but he insisted and gave me his knife, and under his instructions I scratched it out. * * * I had no right to disregard his order. Silbernagel had charge of the office and supervised office affairs."

A few days prior to the dissolution, in matter of a contemplated loan, the book-keeper of A. Lehman & Co. was sent in accordance with an agreement to examine the books of the firm of Godchaux & Silbernagel.

The latter as a witness testified:

"When he came to the loan of $4000 I told him that this was my mother's money, but that it would not trouble us. I did not say that it was merely a matter of form. I said that while this money was obtained on a plantation belonging to me, I owed more than this to my mother, and while it would be in the business, at the same time I paid her on account, and she must have credit for it on our books otherwise I would withdraw the amount."

This book-keeper's testimony is completely at variance with the above.  He says:

A.  "Well, my purpose was to see as near as I possibly could in reference to the liabilities of the firm.  When I came to the loan account, the amount of $4000 was there to the credit of Mrs. Haas.

"Mr. Silbernagel stopped me and said: 'This does not figure in the liabilities of the firm of Godchaux & Silbernagel, it has nothing whatever to do with the liabilities.'  Consequently I did not put it down as a liability; he gave me so to understand."

Q.  "Did he tell you what that $4000 to the credit account of Mrs. Haas was for?"

A.  "No, sir; he said it was no liability, that it was not owing to the firm."

Other witnesses prove that Silbernagel treated with his vendees on the basis that they were not expected to pay this claim.

He spoke of it as his own, and referred to it as an additional consideration to pay him the discount he asked.

Plaintiff alleges in her petition that he put said sum to the credit of his capital account, "and that subsequently, in order to pay a portion aforesaid to your petitioner, her son transferred on the books of said firm said sum of $4000 from his own credit as aforesaid to the credit of your petitioner."

We will dispose of the question of the erasures in the books with the statement that it is the duty of each partner to carry on the business in the interest of the partnership.  The accounts of his transactions should be concisely and correctly kept.

No partner has the right to prefer his individual interest to that of the firm, and he should not, even remotely, place himself in opposition to its interests.

It is elementary that there is a community in the property of the partnership.

Each partner has an interest in every parcel or the whole.

He has not an exclusive right to any part of the partnership stock in trade so as to enable him to separate it from the common for his own account, but he may transfer his interest in the firm.

The transfer of a sum or claim or part of the capital stock of the firm of which he is a member is not within the scope of its ordinary business, and will not bind the partners or the creditors of the firm without their consent.

But partners may, upon sufficient consideration, agree that the whole or any part of the property of the firm shall become the separate property of a third party in satisfaction of a claim against one of the partners individually.

The transfer will hold good as to the partners.

The rights of creditors are not an issue of the case.

The partner of Lazard Godchaux condoned the irregularity and ratified the entries as made.

The testimony of I. M. Levy, a disinterested witness, is uncontradicted. He states emphatically that it was agreed to let the entry remain in the name of the plaintiff as creditor.

He had no right originally to change a part of his capital account to the name of his mother as a creditor.

He did make it without right, but it was approved by his copartner.

Partners must be held bound by their own acts.

The debt to the plaintiff was from the date of the agreement a contract in the name of the partnership, within its scope, by the consent of Lazard Godchaux the only other partner.

Her name appeared on the books as a creditor. The trial balances for October, November and December, showed the indebtedness to her at the time that the defendant firm bought Silbernagel's interest, and bound themselves to pay the indebtedness of the firm.

The records do not disclose that the creditor whose claim was entered, as is shown, had knowledge or notice that her son, as partner, had exceeded his authority, or that he had acted without the consent of his partner originally.

The agreement subsequently has made plaintiff's right to payment absolute.

If the partner who sold made false representations as to the said claim, and thereby occasioned loss or damages, he only is responsible.

Judgment affirmed at appellant's costs.